Please call the next case. 114-0350, Dominia Slater. This is a fair mark. Counsel, you may proceed. May it please the Court. Counsel, my name is Damien Flores. I represent Ms. Dominia Slater, plaintiff appellant in this matter. On the date of accident in question, June 24, 2009, Ms. Slater was a 44-year-old female working as a cafeteria worker for two years for this employer, lifting up to 40 pounds on a daily basis. It's undisputed that on the date of accident she slipped and fell on the block of the freezer, landing on her buttocks, hitting her left foot, and she sought immediate treatment that day. It's also undisputed that she was completely asymptomatic for any back pain leading up to this date in question. At arbitration, arbitrator Mason adopted the opinion of her treater, Dr. Ingle, and the diagnosis of lumbar facet syndrome at the L34 level. And then you, of course, have Dr. Griff, who opines the opposite, right? Correct. Correct. So where does that leave us? It leaves us here. Well, what we're dealing with is the question of fact. We're obviously dealing with the question of fact, and ultimately, you know, the arbitrator adopted the opinions of Dr. Ingle and Dr. Grishin at the commission level. The commission adopted the opinions of Dr. Griff. And so why can't they do that, I guess, is my question. Well, the issue is obviously whether they committed a manifest way of evidence taken into that account, whether it was there. We're dealing obviously with an issue of credibility, an issue of whether Dr. Ingle and Dr. Grishin are more credible than Dr. Griff, and ultimately what the ultimate diagnosis is. The commission adopted the opinions of Dr. Griff, and they determined that Dr. Griff's opinions more closely mirrored the evidence in the record. The problem is that Dr. Griff did not have all the relevant medical evidence. Particularly, Dr. Griff never reviewed the medical evidence that Dr. Grishin and Dr. Ingle reviewed to diagnose lumbar facet syndrome. What I'm talking about is Dr. Griff never reviewed the 93009 MRI scan. Dr. Griff never reviewed the February 5th, 2010 MRI scan. Dr. Griff never reviewed the diagnostic 62110 medial branch block. He never reviewed the confirmatory 7510 medial branch block, and he never reviewed the 72610 procedure, which treated the lumbar facet syndrome. Had Dr. Griff reviewed all this medical evidence, I wouldn't be standing before you. Though I might have disagreed, I would have no basis for my appeal. The basic rule is that an expert's opinion is only as reliable as the basis of that opinion. If the foundation of that opinion is flawed, his opinions crumble. In our brief, we cite two cases. We cite Eskam and Clark. In both cases, this court reversed the commission using the manifest weight of evidence standard of review because the employer's expert failed to give proper consideration to medical evidence, which the court found to be relevant. In the case at hand, not only did the expert not give or fail to give proper consideration, Dr. Griff gave absolutely no consideration to the relevant medical evidence. Dr. Griff was never afforded the opportunity to review the diagnostic test and say, here's my opinion. Since day one, the employer has never addressed the issue as to why Dr. Griff never reviewed these records. And since day one, the employer has never addressed the case at hand. Going one step further, not only did Dr. Griff not review the key diagnostic evidence for the diagnosis of lumbar facet syndrome, on cross-examination, he provided a systematic, step-by-step review on how you diagnose and treat lumbar facet syndrome. To no fault was known. Unbeknownst to him, he was describing step-by-step what Dr. Engel did to diagnose and treat lumbar facet syndrome. Arbitrator Mason actually stated that the opinions of Dr. Griff served to prove the lumbar facet syndrome diagnosis. Who's Dr. P-A-H-W-A? Excuse me? Who is Dr. P-A-H-W-A? Dr. Powell was an original IMB. His opinions, his old conclusions were not admitted to evidence. He was unavailable for deposition. So the only thing that got into the record was his review. He found there was no abnormalities, is that right? Yeah, but Dr. Powell also did not review any of the diagnostic evidence in question. He didn't review any of the information which I'm discussing that Dr. Griff had reviewed. What did the objective diagnostic test show? Well, the first two MRIs showed facet arthropathy at the L34 level. Okay? You know, facet arthropathy, it could be there, but it could be asymptomatic. The second two medial branch blocks, which were diagnostic tests, they showed that that level was symptomatic. You have the first test, because of the possibility of a false positive, you have the second test. Both of those tests confirmed that that level was symptomatic. And that is exactly what Dr. Engel and Dr. Griff testified to. So the lumbar strain diagnosis provided by the commission is not supported by the record. In light of the facts in Dr. Griff's opinions, the commission's reliance upon his opinions was against the manifest weight of evidence. It was against the manifest weight of evidence to adopt the opinions of an expert who agreed with the process. He agreed and defined the process for the diagnosis of this condition, and without his knowledge, everything came true. But then when they asked him, did she have lumbar facet syndrome, he says, no, of course she didn't have lumbar facet syndrome, but he never reviewed the diagnostic test. I asked the court to do as he did in Clark and Eskrim, and I asked that Ms. Slater's, the original decision of the arbitrator, Mason, be reinstated, and that the diagnosis of the lumbar facet syndrome be adopted by this court. In regards to medical treatment, the basis for the denial of medical treatment was two-part. One, the opinions of Dr. Griff, and second, the commission alleged that there was a lack of improvement with the treatment. This couldn't be farther from the truth. Mrs. Slater had the injections. She did have, you know, temporary flare-up and pain, but Dr. Engel testified that this flare-up is common. Once she had the treatment with physical therapy, she was eventually, once she was able to complete a work conditioning program, she was able to return to work without restrictions. Once the diagnosis falls into place, once the medical falls into place, everything else will fall into place in regards to TTD, PPD. Aside from minor miscalculations that the arbitrator made, I would ask that you reinstate the arbitrator's opinions. Thank you. Thank you, counsel. We'll have time on reply. Counsel, you may respond. Thank you. Good morning, Justices, counsel. My name is Terry Donohue on behalf of the defendant, Apelli Aramark, in this matter. May it please the court. The defendant in this case submits that the commission's decision is not against the manifest weight of the evidence, that the claimant did, in fact, only sustain a lumbar sprain, that he was at maximum medical improvement as of December 29, 2009, and that his permanency was 5% men as a whole and that the evidence, there was ample evidence supporting that decision and that the decision should be affirmed in total. As counsel stated, there are absolutely no issues of law here. These are merely questions of fact, and there are numerous supporting facts, which I will hopefully catalog and begin to put into the defendant-respondent pile of evidence in this case. The evidence begins with the emergency room visit on the date of the accident, June 24, 2009. When the claimant goes there, the predominant diagnosis and complaints are merely the left ankle pain. It's clearly not a big back injury. They did not emphasize a low back injury. The assessment was primarily ankle sprain slash contusion, and then there was a reference to a Cossack's contusion. Going forward from there, the treater was Dr. Piazza, June 25 and July 1 of 2009. Her concern was not so much back pain coming from the injury, but rather from kidney stones that the claimant had. She mentioned that on those two dates. Going forward again, on August 3rd of 2009, another treater, Dr. Cullen, her assessment was that this was a lumbar strain or it was back pain from kidney stones. Again, this is another treater emphasizing that this is merely a back strain. Your opponent has alluded to numerous diagnostic tests supporting the claimant's position. Weren't there a number of negative diagnostic tests? There seems to be in dispute here, Wu. Where does the objective diagnostic test line up here? As far as I'm concerned, every single diagnostic test supports the decision denying their claims. There was initially, okay, after we've gone through the treatment and now we get to the first diagnostic test, which is a lumbar MRI on September 30, 2009, they're looking for something wrong. There's no disc herniation. There's mild bulging. There's no nerve compromise. There is a superfluous mention of a trace amount of set arthropathy, which is arthritis. That is the last thing mentioned. That is a completely normal MRI, according to most orthopedic surgeons. Even so, when he gets to Markey or she gets to Markey Medicos, they go ahead and do another MRI less than around two months later on December 9, 2009. Why that was necessary is unclear, but, again, there's only minor bulging at L3-4 and there's only an incidental final notation of mild set arthrosis, which, again, is arthritis. Again, this is a completely normal standard objective medical test. By the way, it's not as though Dr. Graff didn't have these reports. He did have them and he did discuss them and he was aware of them and he did consider them. So you don't agree with his assessment that Graff was not relying on these reports at all? I do not agree with his assessment on that. He had both of these MRIs. The next objective test was an EMG. Well, actually, if I may, unless you want me to go forward with all this. I just want you to summarize it because he characterized the diagnostic test as supporting the claimant's complaints. Sure. Well, counsel, it seemed to me, and I wasn't keeping track of all of the dates, but opposing counsel was indicating Dr. Graff's opinions are fatally flawed because he didn't have certain reports of testing. But those postdated December 29, 2009, are there certain tests and findings that he did not see that postdated December 29 of 2009? Well, I can answer that by saying he did have the next objective test, which was an EMG from February of 2010, and he discussed that and considered it. Probably the most important study in this whole case was the discogram and then the post-discogram CT scan done in April of 2010. He did have that. He had the report. He had the films. He reviewed the films. He, like Dr. Engel, agreed that those discs were pristine, that there was nothing wrong there. That's probably the most important study in this whole test because by that time, after they had done MRI number one, MRI number two, EMG, they're looking for possible herniated disc or radiculopathy. They had come up with nothing at that point, so then they're thinking maybe this is like a low back pain situation, possible fusion situation, so they do a discogram. They do it in April of 2010. The petitioner complained subjectively 10 out of 10. They're like, wow, we've got something here. This is it. So then they do the post-discogram CT scan, and what's evidenced there is what they call class zero tears. There's nothing there. Even Dr. Engel agrees that's a completely negative study. Her subjective complaints can be completely ignored, and there we have it. So Dr. Graf had that information. In addition to that evidence, I mean, he did have the examination results. It's not as though Dr. Graf is alone. We have the other treaters, Dr. Piazza, Dr. Cullen. Prior to that, we had the MRI studies. We had Dr. Paolo December 29, 2009. Not to belabor that, but again, a normal lumosacral examination, nothing wrong with the spine, no atrophy, straight leg raising, LASIK test, all normal, all negative. Really importantly, when we get to the lumbar facet syndrome question, Dr. Paolo in December of 2009, his clinical testing was that lumbar extension and lumbar flexion testing were within normal limits, and that's important in the disputed diagnosis of lumbar facet syndrome because if somebody has lumbar facet syndrome, I think both Dr. Graf and Dr. Engel agree, what you typically want to see is pain on extension. In other words, when they're extending their spine, they're loading up the facet joints in their spine and putting weight on it, and that's typically when you would see pain. The petitioner in this case had pain with extension when she was taking weight and pressure off of the lumbar facet. Now, Dr. Engel, was he the treating physician? He was. Okay. Did he acknowledge that she did not have what he called classic lumbar facet syndrome? He did. That was his opinion. And that's her treating physician? Correct. Correct. And the reason he said that was based on the shared clinical findings of Dr. Graf, Dr. Paolo before that, and I believe Dr. Engel as well. So clinically, and I think usually that should be the first piece of evidence and possibly the most important in directing treatment, she doesn't have lumbar facet syndrome. Why you would go further from there is another question. So at any rate, we eliminated the herniated disc radiculopathy scenario by the time the EMG had been done in February 2010, and then we get to the discogram and post-discogram CT scan in April 2010, again, which provided zero evidence to go forward on this case treatment-wise in any manner. And really what's important is you can't believe her subjective complaints because we went from 10 out of 10 subjectively to, like, no evidence to support it. A class zero disc, I don't know that I've seen that before. What's also disturbing about Dr. Engel, the treater's diagnosis as he goes on, he continues to use the diagnosis herniated disc all the way through the end. So even by the time she gets a functional capacity evaluation, he's calling this a herniated disc diagnosis when he gives testimony that sometime around June 2010, he was wrong and his diagnosis changed from herniated disc to lumbar facet syndrome. I don't know why the records continue to maintain the earlier diagnosis and attempt to justify treatment based on that earlier diagnosis, except for the fact it probably sounds more definitive and significant. Dr. Engel testified. He agreed that there are only 10 percent of low back cases involve this gray diagnosis of lumbar facet syndrome. So that's a very small amount. And then he admitted that this would be even less likely in her case due to the clinical findings. Well, what do you make of this? Did he say that she had it but it was not a classic lumbar facet syndrome? Is his opinion somewhat inconsistent? I believe it is inconsistent. So going forward, what Dr. Engel chooses to do is ignore essentially the post-discogram CT scan, and he decides to go ahead with medial branch blocks. By the way, it's not as though Dr. Engel and Dr. Jerison, both treaters, are on the same page on this. Dr. Jerison had examined her. His diagnosis wasn't lumbar facet syndrome. It was lumbar disc disease. What he wanted to do here also wasn't medial branch blocks, which is a diagnostic treatment and a precursor to radiofrequent ablation surgery. Dr. Jerison, instead, he just recommended simple therapeutic injections. So in trying to characterize those two as a shared opinion, I don't think that that's correct. Counsel, here again, and I'm going back to what the proposing counsel is saying, is a fatal lack of evidence or a fatal lack of foundation on Dr. Graf's part. He's saying that Dr. Graf did not review the December 8, 2009, MRI film. Do you agree with that? He did not review the film. Did he review the report? He did. So the report did not indicate an impression of facet arthrosis at L3-4. Is that right? Specifically, it mentioned at the end, after the mild balding, a trace amount of facet arthropathy. Okay. So Dr. Graf would have been privy to that report. Is that right? Yes. He had reviewed that particular report as well as the next one. All right. And what about the medial branch blocks that claimant indicates Dr. Graf did not have the benefit of? Were those indicative of facet syndrome? Well, that's a question of fact and interpretation, I suppose. The claimant is posturing this as though Dr. Graf was tricked and 100% agreed with Dr. Engel that, in fact, we have lumbar facet syndrome. But I don't believe that's the case. I believe that Dr. Graf simply said that, theoretically, one can have an aggravation of a preexisting lumbar facet syndrome by a trauma, and I think any sensible doctor would agree with that. What Dr. Graf thought, though, was that the clinical presentation is the most important, and she did not have lumbar facet syndrome clinically. And Dr. Pawa shared that as well as Dr. Engel, so I don't know why we go forward with that. But maybe following up a little bit more on that, Dr. Engel then proceeded with a medial branch block in June of 2010, and the findings on that were she expressed relief, I think, 20 minutes. That's all we have. We have like a one sentence. She experienced pain relief 20 minutes following the injection. And there was some questioning regarding that. And Dr. Graf, although he, again, discussed the importance of the clinical presentation and the fact that she did not present as a classical facet syndrome individual, that 20 minutes is perhaps too short of a time to make those conclusions, that she does have the lumbar facet syndrome that you want to go ahead and do an ablation. And maybe another important fact is that she then had another one of these blocks, perhaps several weeks later, and it was indicated that she experienced pain relief. It also, although it indicated that she experienced muscle spasm. And I'm not sure exactly what to make of that. Let me ask in summary, is Graf's opinion then supported by the medical evidence? Clearly you're saying it is. Yes, I believe it is. Counsel, your time is up. Thank you. We simply ask that the decision be affirmed and told. Thank you, counsel. Counsel, you have time to reply. Just briefly. First of all, counsel mentions that she only complained of coccyx pain or buttocks pain in the ER. I think we can all know that that can lead to low back pain. And that she sought treatment the very next day, complaining of low back pain with radiation going down the legs. One thing that is very clear, counsel tried to avoid it as much as possible and they've been avoided all this full time too. Dr. Graf did not review the diagnostic tests, the injections, which were used to diagnose the lumbar facet syndrome. That is clear. Dr. Graf never reviewed that. Dr. Graf did not review the MRI scans, which noted facet arthropathy or facet arthritis. Did he review the reports related to those? He did review the reports, and the reports noted some, you know, arthropathy or arthritis at that level. He says that they were deemed to be non-significant. But what's most important in this case is whether those levels are symptomatic. Well, you've alluded to what you believe is to be the alleged superiority of the opinion of Engle over Dr. Graf. Was he correct that Engle was treating her for a herniated disc, which turned out to be the wrong diagnosis? Correct. The way Dr. Engle described this is there is a 10% chance that with her complaints that it's lumbar facet syndrome. So as you have a quarterback who checks down and you've got to go down their passage, he's going to focus on the herniated disc. She has the injection. The injection does not provide relief. But she's still having pain going down her legs, which she diagnoses as radiculopathy. This also, the company clinic diagnoses radiculopathy. But did Engle then change his diagnosis? Dr. Engle changed his diagnosis after he does the discogram. The discogram shows the discogram, correct, was negative. Once you have a negative discogram, he decided that that disc was not, the actual disc was symptomatic. Well, the commission viewing all this decided that maybe, you know, his opinions were not superior, okay? But we're dealing with two distinct things. There's the facet and there's also the disc. Once the disc is determined not to be the pain generator, he focused on the facet. And when he focused on the facet, that's when he clearly diagnosed the facet. What do you make of Engle acknowledging that she did not, quote-unquote, have classic lumbar facet syndrome? What does that mean? That is true. She did not have classic lumbar facet syndrome, and that's why he focused on going with the discogram. And the reason it was a classic, though she did have pain with extension, she also had pain with flexion. There's nobody who states in the record that the pain with flexion rules out the lumbar facet diagnosis. Obviously, this is complicated. She did have a kidney stone issue. I'm not a doctor, but that could have been something that was contributing and also making this more of a difficult diagnosis. But once they did the diagnostic test, once they did the medial branch block, they definitively noted that that was a pain-generating level. And once again, Dr. Graf never reviewed it. If Dr. Graf would have reviewed this and said, no, that's incorrect, I don't have anything to stand on. But they never gave Dr. Graf those records. They had ample opportunity to do so, and that was never done. And I just ask that the decision of the arbitrator be reinstated based upon this. Thank you. Thank you, counsel. Both the arguments in this matter have been taken under advisement, and this position shall issue.